**In re MADISON'S PARTNER GROUP, INC., Debtor.**

**Bankruptcy No. 3–86–449.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Oct. 30, 1986.

---

Ronald Groth, Minneapolis, for debtor.

Michael Kallas, Minneapolis, for First Edition Equipment Partnership No. 1.

Patrick Scallen, St. Paul, for Last Nat. Corp.

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter is before the Court on motion by First Edition Equipment Partnership No. 1 and its individual partners for relief from the automatic stay concerning certain personal property, equipment and a bar used by the Debtor in connection with the operation of Debtor's business. Appearances were noted in the record. Evidentiary hearing was held September 19, 1986, and limited testimony was thereafter taken on September 29. Based on evidence and testimony heard and received at hearing, and upon arguments and memoranda of counsel, the Court now being fully advised in the matter makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

The primary focus of this dispute is on a 29–foot bar and back bar of questionable value utilized by the Debtor in the operation of its bar and restaurant business.[1] Prior to November 30, 1983, an entity known as Last National Corporation (hereinafter LNC) utilized the restaurant premises where this bar is located, in connection with the operation of its restaurant and bar. On November 30, LNC sold certain restaurant equipment to an entity known as First Edition Management Limited Partnership (hereinafter FEMLP). That equipment was thereafter used by an entity known as First Edition, Inc. (hereinafter FEI) and FEMLP in connection with the operation of a restaurant and bar on the same premises known as the First Edition Restaurant. On May 1, 1984, Movant, First Edition Equipment Partnership No. 1 (hereinafter FEEP) leased certain other restaurant equipment to FEI pursuant to a lease agreement.

The equipment leased pursuant to the agreement was acquired by FEEP through financing arrangements with a bank known as Southwest Fidelity, and apparently included the grant of security interest to the Bank in the bar, at least to the extent of improvements made to it at or shortly after FEI commenced operation of the First Edition Restaurant. On January 31, 1985, the Debtor entered into a purchase agreement with FEMLP and FEI to purchase the restaurant and, apparently, all of the prior agreements with respect to the restaurant equipment (including the 29–foot bar) were assumed by the Debtor as part of the transaction.

All did not go well with the Debtor's business, and obligations under the various agreements subsequently became in default, including obligations to Southwest Fidelity. FEEP was originally indebted to Southwest Fidelity in the amount of $150,-

---

1. The facts surrounding the controversy, along with the issues raised, present what could easily be a classic law school exam question devised by a typically enthusiastic (and probably somewhat perverse) professor.

000.00, secured in part by the bar. When the note, assumed by the Debtor in connection with its purchase of the restaurant, went into default, Southwest Fidelity contacted the principals of FEEP. The individual partners had guaranteed the note, and the Bank gave notice of its intent to call the guarantees. In response to the notice, there was apparently some discussion between the principals, through Thomas L. Steffens (partner, lawyer and authorized spokesman) and the Bank with respect to how the note would be paid. In connection with that discussion, the Bank's president sent Steffens a letter dated May 9, 1986 (Exhibit 7) wherein the Bank stated that it was willing to assign the Bank's security interest in the property to the individual partners upon full payment of the FEEP note with the Bank.

On June 4, 1986, the individual partners executed an unsecured note with Southwest Fidelity in the amount of $114,772.26. That note apparently constituted payment in full of the outstanding balance due on the FEEP defaulted note. Shortly thereafter, on or about July 2, 1986, the FEEP note was stamped "paid" and presumably was delivered to FEEP. Steffens later testified in deposition that the partnership, FEEP, paid off the loan to the Bank. On August 21, 1986, one day before the present motion was filed, Southwest Fidelity executed an assignment of the FEEP note that had been earlier stamped paid, along with the Bank's security interest, to the principals of FEEP. In connection with that transaction, the Bank entered on the FEEP note the words "Cancelled in Error".

FEEP and its individual principals have now brought this motion for relief from stay to repossess the bar as assignees of Southwest Fidelity to the FEEP note and security interest.[2] The Debtor resists the motion alleging that: the FEEP note was paid by the partnership, it was properly discharged, and consequently, the security

agreement was extinguished upon payment; in any event, the bar is a fixture, the Bank's financing statement filed with the Office of Secretary of State did not perfect the Bank's security interest in the bar as against a bona fide purchaser of real estate, and, consequently, the security interest is avoidable pursuant to 11 U.S.C. § 544(a)(3); and, the security interest is avoidable under 11 U.S.C. § 544(a)(1) because the debtor-in-possession, trustee, has the status of a judicial lien creditor, and the Bank's security interest in fixtures perfected with the Secretary of State cannot take priority over the trustee as a subsequent judicial lien creditor with respect to real estate.

## II.

Moving from last to first, although the movants deny that the bar is a fixture, it is a fixture. In light of the evidence and testimony adduced at hearing, the Court is led to this common-sense conclusion in light of the criteria ordinarily applied under Minnesota law for making such determinations. See 8A Dunnell Minn. Digest 2d *Fixtures* § 1.00 (3rd Ed. 1979) at p. 134. However, failure of Southwest Fidelity to file its financing statement with the real estate records in the county where the bar is located does not give rise to the trustee's avoidance powers under either §§ 544(a)(1) or (a)(3). With respect to the latter, the statute specifically provides that trustees do not acquire bona fide purchaser status in fixtures. See 11 U.S.C. § 544(a)(3) as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984.[3] Furthermore, under Minnesota law, a fixture filing with the Secretary of State's office takes priority over judicial lien creditors including a trustee in bankruptcy. See MINN.STAT. § 336.9–313 and the official comments. See also J. White and R. Summers, *The Uniform Commer-*

---

**2.** The Court understands that property and equipment other than the bar itself is not in issue and that the Debtor has either surrendered, or is prepared to surrender, everything but the bar.

**3.** The petition in this case was filed February 21, 1986.

*cial Code,* § 25.10 at p. 1061 (2nd ed. 1980). Accordingly, the fact that the bar is a fixture does not entitle the debtor-in-possession/trustee to avoid Southwest Fidelity's lien on the bar, purportedly assigned to the movants.

We come then to the question of whether, in light of its history, the FEEP note was extinguished or merely assigned upon the execution of the new note by the FEEP partners on June 4, 1986. Steffens' deposition testimony that the partnership paid the obligation is the only testimony by the movants themselves regarding their intent in the transaction. While the president of the Bank testified that it was the individual partners' intention to pay on the guarantees with the new note and take an assignment of the Bank's security interest in the property, that testimony is not competent evidence on the issue. The Bank's letter of May 9, 1986, (Exhibit 7) to the individuals is not competent evidence of the individual partners' intentions either.

These individuals created and maintained no fewer than three separate legal entities to be somehow involved with a single business enterprise. Additionally, they dealt in their individual capacities. While undoubtedly they perceived advantages to dealing in this manner, their intentions regarding the transactions between the entities, the individuals, and others cannot be assumed on the basis of principles ordinarily adherent to commercial transactions. Certainly, testimony of others with respect to the intentions of these individuals and the various entities is not probative. That is especially so in light of the testimony by their spokesman and attorney, Steffens, which contravenes intentions attributed to them by the Bank.

If FEEP and its partners intended that the FEEP note be paid by the partnership, and if the note was, in fact, so paid and returned to it evidencing its payment, the security interest of the Bank was extin-

guished leaving nothing to be later assigned. On the basis of the record as presently constituted, there is no competent evidence otherwise. Mr. Steffens made no appearance at the hearing to clarify, modify or explain his deposition testimony; and no other partner testified with respect to the intentions of FEEP and the individual guarantors in their transactions with the Bank. Accordingly, for purposes of this relief from stay proceeding, it must be presumed that the intention of the partners and the effect of their transaction with Southwest Fidelity was exactly as Steffens testified in deposition—namely, that the partnership paid the debt. On the basis of the existing record, the Court is not persuaded that the movants are entitled to relief from the stay, in that the Court is not satisfied that they have a security interest to enforce.

But even if it were otherwise, the Court would not be inclined to grant relief from the stay under the circumstances of the matter. Although one of the FEEP partners testified that in his opinion, the value of the bar is $30,000.00, it is likely worth substantially less than that. In fact, on the basis of other evidence and testimony, it is unlikely in this Court's opinion that the bar is worth little more than a salvage value of up to $3,000.00.[4] On the other hand, even though the bar likely has nominal liquidation value, it has significant value as an integral part of the Debtor's business operation, and is, in fact, essential to its reorganization effort. No evidence was offered by the movants tending to show continued depreciation of the bar or other diminishment in value due to misuse or abuse. It simply would be inconsistent with the purposes and spirit of the Code to grant relief from the stay at this time enabling the movants to gut the premises of a substantial and needed fixture.

Based on the foregoing, IT IS HEREBY ORDERED: the motion of First Edition

---

**4.** Southwest Fidelity gave no second thought to abandoning its security interest in the bar and all other property in exchange for an unsecured note from the partners in the amount of $114,-

772.26. The partners were already liable on the guarantees and the Bank received no consideration for giving up its security interest.

Equipment Partnership No. 1 and its individual partners for relief from the stay is denied without final determination with respect to their secured status; however, even if secured, movants are presently adequately protected.

### In re MADISON'S PARTNER GROUP, INC., Debtor.

### Bankruptcy No. 3–86–449.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Nov. 7, 1986.

Ronald Groth, Minneapolis, for debtor.

Michael Kallas, Minneapolis, for First Edition Equipment Partnership No. 1.

Patrick Scallen, St. Paul, for Last Nat. Corp.